

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **JOSHUA JOHNSON** | ) | **Docket No.: 2015-01-0098** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 3532-2015** |
| **FAMILY DOLLAR STORES, INC.** | ) | |
| **Employer,** | ) | **Judge Audrey A. Headrick** |
| **And** | ) | |
| **INDEMNITY INS. CO. OF NORTH** | ) | |
| **AMERICA** | ) | |
| **Insurance Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING
## REQUESTED MEDICAL BENEFITS

---

This matter came before the Court on July 7, 2016, on a Request for Expedited Hearing filed by the employee, Joshua Johnson, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Family Dollar Stores, Inc. (Family Dollar) is required to pay for past and ongoing psychiatric treatment that he sought on his own and, if so, whether his attorney is entitled to attorney fees. The central legal issue is whether Mr. Johnson is likely to prevail at a hearing on the merits of these issues. For the reasons set forth below, the Court finds Mr. Johnson is unlikely to prevail at a hearing on the merits in proving entitlement to past and future psychiatric treatment based on the evidence presented at this time.[1] Accordingly, the issue of whether Mr. Johnson's attorney is entitled to attorney fees is moot for purposes of this expedited hearing.

### History of Claim

This case involves an incident that occurred on January 14, 2015, when a shoplifter in Family Dollar stabbed Mr. Johnson, an assistant manager, in the throat. The

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

1

parties stipulated that Mr. Johnson received authorized medical treatment from Erlanger Medical Center (Erlanger) and Dr. Phillip Smith. Although the parties agree that neither Erlanger nor Dr. Smith referred Mr. Johnson for psychiatric treatment, he alleges he developed post-traumatic stress disorder (PTSD) due to the January 14, 2015 stabbing incident.

After an ambulance transported Mr. Johnson to Erlanger, the medical evidence indicated he provided a past medical history to his providers. (Ex. 5.) Specifically, under "Past Medical History," it identifies "ptsd" regarding Mr. Johnson's psychiatric history in two different areas of the record. *Id.* The record reflects that the past medical history information was obtained and entered into his chart at 18:09, on January 14, 2015, the date of the stabbing incident. *Id.*

Erlanger admitted Mr. Johnson on January 14, 2015, and he remained hospitalized through January 20, 2015, for observation of esophageal injuries. *Id.* During his hospitalization, Mr. Johnson testified he told Dr. Smith and some nurses of an inability to sleep unless heavily sedated, nightmares of seeing his own funeral, and a fear of leaving his room  However, the record is silent as to Mr. Johnson reporting those symptoms to anyone. The Discharge Summary addressed Mr. Johnson's laceration and stated "[n]o other issues noted." *Id.* Mr. Johnson allegedly reported his symptoms to Amy Harvey, his store manager; Glen Moregain, his general manager; and Kelly Stanley, his nurse case manager. He indicated the response given to him by everyone was that the immediate concern was for him to get better physically.

Upon his discharge from Erlanger, Mr. Johnson saw Dr. Smith for follow-up on two occasions. (Ex. 4.) During the first visit, although unrelated to his stab wound, Dr. Smith noted that Mr. Johnson complained of right ear pain. *Id.* Dr. Smith examined his ear, prescribed Neosporin Otic Solution, and advised him to see his primary care physician if the problem did not resolve in five days. *Id.* At the second visit, Dr. Smith noted Mr. Johnson "has no complaints." *Id.* Dr. Smith opined Mr. Johnson did "not need any further follow-up." *Id.*

Mr. Johnson testified he discussed his psychiatric symptoms with Dr. Smith at his post-discharge appointments.  Specifically, he stated he reported to Dr. Smith his inability to sleep, nightmares, and anxiety. When completing Dr. Smith's New Patient Information form, Mr. Johnson did not disclose his past psychiatric history of PTSD. *Id.* However, he did check the "yes" boxes regarding nervousness, depression, and problems sleeping. *Id.* Upon asking Dr. Smith for help regarding his psychiatric symptoms, Mr. Johnson stated Dr. Smith referred him to Ms. Stanley, his nurse case manager, and Mary Strumbach, his adjuster. However, Dr. Smith's record is silent regarding any discussion with Mr. Johnson concerning psychiatric symptoms.

Mr. Johnson subsequently obtained psychiatric treatment on his own and saw Dr.

Erica Skidmore, a licensed clinical psychologist, who regularly treats patients with PTSD. Dr. Skidmore testified she diagnosed Mr. Johnson with PTSD based upon the traumatic event in which his life was threatened as well as his symptoms of almost nightly nightmares, difficulty sleeping, flashbacks, anxiety, and daily panic attacks.[2] She also stated Mr. Johnson found it extremely difficult being at work and had an inability to go into public places. When asked about causation of Mr. Johnson's PTSD, Dr. Skidmore opined that the stabbing incident was "undoubtedly the cause of his PTSD." Dr. Skidmore also testified that Mr. Johnson had no prior history of PTSD.[3] (Ex. 5; Ex. 2.) During the expedited hearing, Mr. Johnson stated he "was not this way before [the January 14, 2015 incident]." Regarding Mr. Johnson's past psychiatric treatment and his need for ongoing treatment, Dr. Skidmore stated the treatment was reasonable and medically necessary. Dr. Skidmore acknowledged that she did not contact Family Dollar's workers' compensation carrier to request authorization for Mr. Johnson's treatment.

Mr. Johnson argued he is entitled to the psychiatric treatment that he sought on his own with Dr. Skidmore. He relied on *Taylor v. Airgas Mid-South, Inc.*, No. W2012-00621-WC-R3-WC, 2013 Tenn. LEXIS 304, at *5-8 (Tenn. Workers' Comp. Panel Feb. 26, 2013), and *Robertson Co. Bd. of Educ. v. Knight*, No. M2001-00516-WC-R3-CV, 2002 Tenn. LEXIS 166, at *7-8 (Tenn. Workers' Comp. Panel April 2, 2001), to support the following contentions: (1) He was justified in obtaining the unauthorized treatment because he told his medical providers about his PTSD symptoms, and no one addressed it; and, (2) Dr. Skidmore's testimony establishes that the unauthorized medical treatment he received was reasonable and necessary. Mr. Johnson further argued his unrefuted and uncontradicted testimony is that he reported his psychiatric problem to Dr. Smith, his district manager, and his nurse case manager. Additionally, Mr. Johnson requested payment of attorney fees in relation to the disputed psychiatric treatment.

Family Dollar argued the Court must deny Mr. Johnson's request for payment of his unauthorized psychiatric treatment. Relying upon Tennessee Code Annotated section 50-6-204(h) (2015), it contended the statute requires the treating physician to refer the employee for psychological and psychiatric treatment before an employee is entitled to such care. Family Dollar pointed out that Dr. Smith, the treating physician, never referred Mr. Johnson to a psychiatrist or psychologist, and the medical records do not establish that Mr. Johnson ever complained about an alleged, work-related mental injury. It pointed out that Dr. Smith specifically made a referral for Mr. Johnson to see his primary care physician regarding his complaint of right ear pain, yet he failed to reference that Mr. Johnson made any psychiatric complaints and did not refer him to a

---

[2] Mr. Johnson testified he previously served in the military. However, there is no mention that he disclosed that information to Dr. Skidmore.

[3] Although Mr. Johnson did disclose to Dr. Skidmore that he had smoked marijuana two to three times per day for the past seven years, he circled "never" when asked about drug usage on Dr. Smith's New Patient Information form. (Ex. 2; Ex. 3.)

specialist. Pursuant to *Lallo v. Marion Environmental, Inc.*, No. 2015-06-0287, 2015 TN Wrk. Comp. App. Bd. LEXIS 32, at *10 (Tenn. Workers' Comp. App. Bd. Sept. 4, 2015), it further argued the Court is without authority at this interlocutory stage to award attorney's fees.

Mr. Johnson filed a Petition for Benefit Determination on February 12, 2016, seeking medical benefits in relation to his unauthorized psychiatric treatment. The parties did not resolve the disputed issues through mediation, and the mediator filed a Dispute Certification Notice on March 15, 2016. Mr. Johnson filed a Request for Expedited Hearing, and this Court heard the matter on July 7, 2016.

**Findings of Fact and Conclusions of Law**

Mr. Johnson has the burden of proof on all essential elements of a workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). He is not required to prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Mr. Johnson has the burden to come forward with sufficient evidence from which the trial court can determine that he is likely to prevail at a hearing on the merits. *Id.*

The following general principles govern adjudication of this proceeding. In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015). Mr. Johnson must show, to a reasonable degree of medical certainty, that the incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). Likewise, an aggravation of a pre-existing condition is compensable only if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A) (2015). The legislature defined "[s]hown to a reasonable degree of medical certainty" to mean the physician must opine "it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015).

The Court respectfully disagrees with Mr. Johnson's assertion that his testimony about telling Dr. Smith and other individuals that he was experiencing PTSD symptoms is "unrefuted" and "uncontradicted." Instead, based upon the evidence presented, the Court finds Mr. Johnson's testimony is not credible regarding the circumstances

4

surrounding his PTSD diagnosis. On the date he was injured and admitted for emergency treatment at Erlanger, Mr. Johnson disclosed, under "Past Medical History," a *past* psychiatric history of PTSD. (Ex. 5.) (Emphasis added.) The records admitted from Erlanger and from Dr. Smith not only are silent as to Mr. Johnson making any such complaints or exhibiting such symptoms, but they are also silent as to any discussions indicating that he requested psychiatric treatment. Erlanger's discharge summary indicated there were "[n]o other issues noted" besides Mr. Johnson's throat injury. (Ex. 5.) There is no mention by Dr. Smith of any complaints or discussions regarding PTSD symptoms. The Court questions Mr. Johnson's credibility that he reported the PTSD symptoms to Erlanger nurses or to Dr. Smith since the records do not reflect that he did so. Further, Dr. Smith documented Mr. Johnson's complaints of right ear pain and referred him to see his primary care physician if needed, yet he made no mention of any PTSD complaints. Therefore, the Court finds that the discrepancies that exist within the medical records refute and contradict Mr. Johnson's testimony.

Additionally, Mr. Johnson made a material omission in the information he gave to Dr. Skidmore. He failed to disclose to Dr. Skidmore his pre-existing PTSD condition.[4] Conversely, Mr. Johnson testified before this Court that he "was not this way before [the January 14, 2015 incident]." Therefore, based on the foregoing reasons, the Court finds that Dr. Skidmore's opinion is not reliable, since the underlying facts that support her testimony stem from the incomplete history provided by Mr. Johnson.

With those findings in mind, the Court will address whether Mr. Johnson would likely prevail at a hearing on the merits that he is entitled to psychiatric treatment with Dr. Skidmore based on the medical proof presented. The Workers' Compensation Appeals Board provided direction regarding the requirements an employee with pre-existing conditions must satisfy in order to qualify for medical benefits at an interlocutory hearing:

> In sum, to qualify for medical benefits at an interlocutory hearing, an injured worker who alleges an aggravation of a pre-existing condition must offer evidence that the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13)(A) (2014). Moreover, the employee must come forward with sufficient evidence from which the trial court can determine that the employee would likely establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, considering all causes. *See* Tenn. Code Ann. § 50-6-102(13)(B)-(C). Finally, an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by

---

[4] Although perhaps unrelated to his pre-existing PTSD condition, Mr. Johnson did not disclose his past military service to Dr. Skidmore. While he did disclose his long-term, daily use of marijuana to Dr. Skidmore, the Court notes he circled "never" regarding drug usage on a patient intake form for Dr. Smith.

the aggravation.

*Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015). (T.R. 6 at Ex. 2.)

Upon consideration of the evidence presented, this Court finds Mr. Johnson has not demonstrated he is likely to prevail at a hearing on the merits to establish he sustained an aggravation of his pre-existing PTSD condition due to the January 14, 2015 incident. Dr. Smith, the authorized treating physician, neither diagnosed Mr. Johnson with PTSD nor made any referral for psychiatric treatment. Mr. Johnson sought treatment on his own with Dr. Skidmore, who opined during the expedited hearing that the stabbing incident was "undoubtedly the cause of his PTSD." However, as documented by the Erlanger records, Mr. Johnson failed to disclose his past PTSD condition to her. Since Dr. Skidmore relied upon the incomplete information provided to her by Mr. Johnson, she was not able to provide an informed opinion regarding his PTSD condition. Accordingly, Mr. Johnson's request for medical benefits related to psychiatric treatment is denied.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Johnson's request for the psychiatric treatment he sought for his PTSD is denied at this time.

2. This matter is set for a Status Hearing on September 13, 2016, at 2:00 p.m., ET.

**ENTERED this the 1st day of August, 2016.**

_____
**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set on September 13, 2016, at 2:00 p.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation.**

6

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if

any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Joshua Johnson
2. Medical records of Erica Skidmore, Psy.D. Bates Stamped 000234-000295
3. Medical records of Erica Skidmore, Psy.D. Bates Stamped 000296-000309[5]
4. Medical records of University Surgical Associates, Bates Stamped 000215-000233
5. Medical records of Erlanger Medical Center, Bates Stamped 00016-00038

Technical record:[6]
1. Petition for Benefit Determination with position statement attached
2. Dispute Certification Notice
3. Show Cause Order
4. Request for Expedited Hearing
5. Order on Show Cause Hearing
6. Employer and Insurance Company's Brief
7. Notice of Filing of Affidavit Certifying Records
8. Notice of Expedited Hearing

---

[5] Family Dollar objected to the admission of this portion of Dr. Skidmore's records pursuant to Rule 0800-02-21-.16(6) (2016) of the Tennessee Compilation Rules and Regulations because they were late-filed on July 1, 2016. However, Mr. Johnson filed the records upon receiving them from Dr. Skidmore's office. Therefore, for good cause shown, the Court admits the late-filed records of Dr. Skidmore as Exhibit 3.

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Medical Benefits was sent to the following recipients by the following methods of service on this the 1st day of August, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service Sent to: |
|------|----------------|---------|-----------|------------------|
| Bill Brown, Employee's Attorney | | | X | WJB@Vollaw.com |
| Kimberly Greuter, Employer's Attorney | | | X | kgreuter@allenandnewman.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov